UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

ROBERT MICHAEL WATTS                                                              PLAINTIFF

VS.                                                        CIVIL ACTION NO.: 3:09cv146-DPJ-JCS

THE CITY OF JACKSON, ET AL.                                                     DEFENDANTS

**<u>ORDER</u>**

This dispute is before the Court on Defendants' motion to dismiss [11] and supplemental motion to dismiss [14]. The Court, having fully considered the parties' submissions and the applicable law, finds that the claims survive Rule 12(b)(6) except that the individual defendants are entitled to qualified immunity as to the federal claims brought against them in their individual capacities.

I.      Facts/Procedural History

The following facts are taken from Plaintiff's Complaint. Plaintiff Robert Michael Watts is an officer employed by Defendant City of Jackson as part of the Jackson Police Department (JPD). Prior to July 2008, Watts was assigned to Downtown Patrol, Special Projects, working Monday through Friday, 7:00 a.m. to 3:00 p.m. At some undisclosed time, Watts was interviewed by the Federal Bureau of Investigation (FBI) regarding potential illegal activity on the part of then-Mayor Frank Melton.[1] Watts claims that Melton learned of the FBI interview and threatened Watts approximately one week before Watts was transferred to Precinct 2 Patrol Divison "Charley Shift," which runs from 10:00 p.m. to 6:00 a.m. Besides being a graveyard shift, Plaintiff alleges that his new detail is more dangerous, and it is "common knowledge

---

[1] Melton passed away in 2009, and his estate has been substituted as the named defendant. The Court will nevertheless refer to "Defendant Melton."

throughout the JPD that JPD officers are assigned to Precinct 2's Charley Shift as punishment for work-related misconduct, or for challenging work-related injustices or authority figures, such as Defendant Melton." Complaint ¶ 23

Aggrieved by this transfer, Watts filed the instant suit in the Circuit Court of Hinds County, Mississippi against the City of Jackson. The Complaint also names the following individual defendants in their official and individual capacities: former Mayor Frank Melton, former Deputy Chief of Police Ronald Sampson, and former JPD Lieutenant Zachary Donaldson. Plaintiff premised his claims on 42 U.S.C. § 1983 for violation of his First Amendment rights (Counts One through Seven). He further alleged state law claims that are not addressed in Defendants' motion. Defendants now move to dismiss the § 1983 claims pursuant to Rule 12(b)(6) for failure to state a claim and based on qualified immunity as to the individual defendants. Plaintiff has responded in opposition, and the motion is now ripe for consideration.

II.     Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (quotation marks, citations, and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

Defendants' motion is somewhat unusual. The motion is based on Rule 12(b)(6) and yet Defendants ask the Court to weigh the facts. Moreover, many of the facts are not reflected in the Complaint nor supported by record evidence such that the motion could be converted to a Rule 56 motion. The averments include items such as the desirability of the new position; "common knowledge" within the JPD regarding assignments; and statements made by counsel during a case management conference. The Court does not weigh facts under Rule 12(b)(6), even if supported in the record. Instead, the Court must separate the conclusory statements contained in Plaintiff's Complaint, give the presumption of truth to the remaining averments, and determine whether, when viewed in a light most favorable to Plaintiff, the allegations show he is entitled to relief. *Id.*

III. Analysis

    A. Failure to State a Claim

Plaintiff alleges retaliation for exercising his First Amendment right to speak with the FBI in conjunction with its investigation of then-Mayor Frank Melton. Traditionally, public employers were permitted to impose restrictive conditions on employment, even when those conditions infringed upon constitutional rights of employees. *See Connick v. Myers*, 461 U.S. 138, 143 (1983). Over time, the Supreme Court altered this rule with respect to First

Amendment rights, holding that the First Amendment protects the right of public employees to speak as citizens on matters of public concern. *See Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will County, Ill.*, 391 U.S. 563, 568 (1968). However, the Supreme Court recently added a threshold consideration to the analysis, finding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

Although the contours of *Garcetti* have not been fully explored, courts have been relatively consistent in requiring the following prima facie elements of a First Amendment retaliation claim under § 1983: "(1) Plaintiff suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (internal quotations and citations omitted). Defendants primarily challenge the Complaint on the first and second prongs of this test.

        1.        Adverse Employment Action

Defendants claim that the transfer was not an adverse employment action because "Plaintiff has not received a decrease in pay, benefits, or any other action that would be indicative of an adverse employment action." Defendants' Memorandum [12] at 5. Aside from the fact that this argument assumes facts not in evidence and exceeds the scope of Rule 12(b)(6) review, the Fifth Circuit has expressly held that "to be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse–such as being less prestigious or less interesting or providing less room for

4

advancement." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 613 (5th Cir. 2007) (citation omitted); *see also Sharp v. City of Houston*, 164 F.3d 923, 933-34 (5th Cir. 1999) (upholding jury's determination that transfer of police officer to less prestigious division was a demotion). The question is whether Plaintiff's factual averments, when assumed true and construed in the light most favorable to him, would state a right to relief. Plaintiff expressly avers that the transfer would be considered punishment; that he moved from a day to graveyard shift; and that the new shift was more hazardous. Such allegations are more than sufficient to plead an adverse employment action under § 1983. *See Sharp*, 164 F.3d at 933-34.

        2.       Whether Plaintiff Spoke as a Citizen on a Matter of Public Concern

          a.      Watts's Role

According to *Garcetti*, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties." 547 U.S. at 421-22. "Accordingly, our first task is to determine whether [Plaintiff's] speech was part of [his] official duties, that is whether [he] spoke as a citizen or as part of [his] public job." *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008); *see also Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007). If he spoke as part of his job, then he was entitled to no First Amendment protection.

Although no published opinions from the Fifth Circuit are directly on point, five post-*Garcetti* decisions from other jurisdictions discuss statements by police officers to the FBI. Four courts held that the officers acted within their official duty and were not protected. *See Huppert v. City of Pittsburg*, 574 F.3d 696, 707 (9th Cir. 2009) (affirming summary judgment and finding no protected speech); *Guthrie v. Bradley*, Civil Action No. 06-0619, 2008 WL 4279805, at

*12-13 (W.D. Pa. Sept. 15, 2009) (granting summary judgment and finding that report to FBI was pursuant to plaintiff's duties as the chief of police); *Wiess v. Vill. of Brooklyn*, No. 07-cv-473-JPG, 2008 WL 4200610, at *9 (S.D. Ill. Sept. 9, 2008) (granting summary judgment and finding that plaintiff "had a general duty as a police officer to report potential crimes," and therefore "he was speaking pursuant to his official duties, rather than as a citizen" when he reported crime to FBI); *Cheek v. City of Edwardsville, Kan.*, 514 F. Supp. 2d 1220, 1232–33 (D. Kan. 2007) (granting summary judgment and finding statements by officers to FBI were "made pursuant to their official duties rather than as citizens, and therefore that speech is not entitled to protection under *Garcetti*") (citing *Morales v. Jones*, 494 F.3d 590, 596-98 (7th Cir. 2007) (reversing jury verdict and holding that officers' statements to assistant district attorney regarding misconduct by police chief were unprotected under *Garcetti*); *Sigsworth v. City of Aurora*, 487 F.3d 506, 511 (7th Cir. 2007) (holding that report to supervisors was not protected); *Williams v. Riley*, 481 F. Supp. 2d 582, 584 (N.D. Miss. 2007) (holding that county police officers spoke pursuant to duties when they submitted written report that detailed the beating of a restrained prisoner by a fellow officer), *vacated*, 275 F. App'x 385, 389 (5th Cir. 2008)). In the fifth case, *Livingston v. Bartis*, the Court denied summary judgment as to some officers who spoke with the FBI and granted it as to others based on the record evidence related to their duties. No. 4:06-CV-1574 (JCH), 2008 WL 185791, at *8 (E.D. Mo. Jan. 18, 2008).[2]

---

[2]In an unpublished opinion, a district court in Hawaii denied summary judgment on a similar claim, but that case was decided before the Ninth Circuit's decision in *Huppert*, which would call the district court's holding into doubt. *Abbatiello v. County of Kauai*, Civ. No. 04-00562 SOM/BMK, 2007 WL 473680, at *1 (D. Haw. Feb. 7, 2007).

The *Huppert* decision from the Ninth Circuit is perhaps the broadest application of *Garcetti* in this context. There, the plaintiff police officer claimed that his cooperation with the FBI fell "outside [his] duties as a member of the [Pittsburg Police Department]." *Huppert*, 574 F.3d at 699. The officer further claimed that the communications took place "entirely 'on his personal time.'" *Id*. at 707. The Ninth Circuit did not know the nature of the communications, but nevertheless concluded that, under *Garcetti*, the officer spoke pursuant to his duty as a "guardian[] of the peace and security of the community" to, *inter alia*, "prevent the commission of crime. . .[and] assist[], in its detection." *Id*. (citation to California authority on the duties of a police officer omitted).

Mississippi law similarly defines the duties of a police officer. Pursuant to Mississippi Code section 45-6-3(c), a law enforcement officer is defined as one whose "primary responsibility is the prevention and detection of crime, the apprehension of criminals and the enforcement of the criminal and traffic laws of this state and/or the ordinances of any political subdivision thereof." Accordingly, an argument exists that Watts's statements to the FBI as part of its criminal investigation were made pursuant to his duty to prevent crime. This would distinguish him from members of the general public who speak with the FBI.

That said, *Garcetti* instructs that the proper inquiry into whether speech was made pursuant to an official duty "is a practical one" and "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." 547 U.S. at 424-25. The Fifth Circuit highlighted this fact in several post-*Garcetti* holdings. For example, in *Davis v. McKinney*, the plaintiff's duties included "overseeing computer-related

7

audits and creating audit summaries and reports" for a governmental entity. 518 F.3d 304, 307 (5th Cir. 2008). The plaintiff claimed that she was retaliated against for reporting child pornography found on work computers to the FBI. The court considered the plaintiff's testimony that reporting to outside authorities was not within her job function as well as her supervisor's testimony that it would be "highly unusual for an auditor to involve any outside authorities." *Id*. at 316. From this, the court concluded that the plaintiff's communications with the FBI were made as a citizen and "qualify for First Amendment protection if they raise a matter of public concern." *Id.*[3]

The present case is before the Court on a Rule 12(b)(6) motion. There is no evidence with respect to Watts's duties and whether they encompass the disputed speech. *See Skehan v. Village of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds*, *Appel v. Spiridon*, 531 F.3d 138, 139-40 (2d Cir. 2008) (finding insufficient factual record on defendant officer's duties and instructing district court on remand to consider the application of *Garcetti* to plaintiff's claims); *Livingston*, 2008 WL 185791, at *8 (finding, based on the record evidence, that some officers contacted the FBI as citizens while others acted as part of their official duties). While this issue will likely resurface in a motion for summary judgment, the averments of the

---

[3]Interestingly, *Davis* relies heavily on *Freitag v. Ayers*, in which a female corrections officer at a state penitentiary complained of sexually hostile inmate conduct. 468 F.3d 528 (9th Cir. 2006). The Ninth Circuit found that her internal complaints were not protected but that her communications with outside agencies, including her report to the Office of the Inspector General, were made as a private citizen. *Id.* at 545-46. *Freitag* was decided three years before the Ninth Circuit concluded that the police in *Huppert* acted within their broader duties as law enforcement officers when they cooperated in an undisclosed manner with the FBI. *Huppert*, 574 F.3d at 707.

complaint, when assumed true and taken in a light most favorable to Watts, are sufficient to withstand Defendants' motion.

b. Matter of Public Concern

Defendant further contends that statements related to the alleged criminal conduct by Defendant Melton, the then sitting mayor of the state's capital city, are not a matter of public concern. The Court finds they are. The Fifth Circuit "has held that speech reporting official misconduct, wrongdoing, or malfeasance on the part of public officials involves matters of public concern." *Denton v. Morgan*, 136 F.3d 1038, 1043 (5th Cir. 1998) (citations omitted); *see also Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008) ("[s]peech relating to official misconduct . . . almost always involves matters of public concern"). Here, the allegations of the Complaint are presumed true, and those allegations are sufficient to satisfy this prong of the test.

3. Pickering Balancing and Nexus

The "Pickering balancing test" weighs a plaintiff's First Amendment rights against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (quoting *Pickering*, 391 U.S. at 568). Statements are not "considered in a vacuum." *Branton v. City of Dallas*, 272 F.3d 730, 741 (5th Cir. 2001) (citing *Rankin*, 483 U.S. at 388). "In performing the balancing, . . . the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Id*. (quoting *Connick v. Myers*, 461 U.S. 138, 152-53 (1983); *Givhan v. W. Line Consol. Sch. Distr.*, 439 U.S. 410, 415 n.4). Thus, the test "recognize[s] as pertinent considerations whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships. . ., or

9

impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Id.* (internal quotation marks and citations omitted.)  In the present case, it is not apparent how a confidential interview between Watts and the FBI would impair Defendants' operations.  Based strictly on the averments of the Complaint read in favor of Plaintiff's claim, the Court finds that the Complaint satisfies the balancing test.  *See id.*

Finally, Defendants do not seriously challenge the nexus between Watts's speech and his transfer, which is obviously reflected in Plaintiff's presumptively true contention that Defendants transferred him immediately after he was verbally threatened by Defendant Melton.  Accordingly, the Court finds that Plaintiff's § 1983 claim survives Defendants' Rule 12(b)(6) motion based on failure to state a claim upon which relief can be granted.

B.     Qualified Immunity

Defendants claim that the individual defendants are entitled to qualified immunity from claims brought against them in their individual and official capacities.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  However, "[m]unicipalities and officers in their official capacity . . . have no comparable right to be free from suit."  *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 406 (5th Cir. 2007).  As for individual capacity claims, there is a two-part test: (1) has the plaintiff alleged a violation of a clearly established right; and (2) did the officers act with objective unreasonableness.  *Fraire v. City of Arlington,* 957 F.2d 1268, 1273 (5th Cir. 1992).

Historically, these inquiries would be taken in order. However, "[i]n *Pearson v. Callahan*, the Supreme Court. . .held that this sequential two-step analysis [is] no longer mandatory." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Pearson*, 129 S.Ct. 808, 818 (2009)). "Instead, lower courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand.'" *Id.* Although taking the prongs sequentially is encouraged, *id.* at 217-18, the second prong dictates the result in the instant case.

Whether the officers acted unreasonably turns on whether "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). If reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity. *Malley v. Briggs,* 475 U.S. 335, 341 (1986). "[E]ven if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir. 1990), *abrogated on another grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992).

Here, the Fifth Circuit has not directly addressed the salient issue–whether a police officer's comments to another law enforcement agency regarding suspected criminal activity fall within his duties.[4] Moreover, the Fifth Circuit observed last year that "all implications of

---

[4]In *Williams v. Riley*, an unpublished (and thus non-binding) 2007 opinion, the court found a question of fact as to whether certain jailers had the duty to report prisoner mistreatment and therefore reversed summary judgment. 275 F. App'x at 385, 389. The Court finds that this unpublished opinion, which does not address the broader duties of a police officer and merely found a question of fact, would not be "sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson*,483 U.S. at 640; *compare Freitag*, 468 F.3d at 544-46 (officer's comments regarding inmates to outside agency protected),

11

*Garcetti* have not been developed . . . ." *Davis*, 518 F.3d at 312. Finally, the few federal courts that have examined similar issues in light of *Garcetti* have generally concluded that the facts of those cases did not present protected speech. *See, e.g.*, *Huppert*, 574 F.3d at 707; *Guthrie*, 2008 WL 4279805, at *12-13; *Wiess*, 2008 WL 4200610, at *9; *Cheek,* 514 F. Supp. 2d at 1232–33. The Court therefore finds that the contours of the subject rights are not sufficiently clear and that the individual defendants did not act with objective unreasonableness. Defendants enjoy qualified immunity from the § 1983 claims brought against them in their individual capacities.

III. Conclusion

For the above stated reasons, the Court finds that the Defendants' 12(b)(6) motion should be denied but that the individual defendants are entitled to qualified immunity for the § 1983 claims brought against them in their individual capacities. All such claims are therefore dismissed.

**SO ORDERED AND ADJUDGED** this the 14th day of October, 2009.

s/ *Daniel P. Jordan III*  
UNITED STATES DISTRICT JUDGE

---

*with Huppert*, 574 F.3d at 707 (statements to FBI fell within general duties of police officers).